UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA SOTO,<br><br>                Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Civil No.   13-cv-2359-BAS (DHB)<br><br>**ORDER RESOLVING JOINT MOTION REGARDING PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**<br><br>**[ECF No. 21]** |

On August 28, 2014, the parties filed a joint motion regarding Defendant the United States of America's responses to Plaintiff Melissa Soto's requests for production of documents. (ECF No. 21.) As part of Defendant's responses to the document requests, Defendant produced a privilege log identifying eleven documents as being privileged under the quality assurance privilege found in 25 U.S.C. § 1675. Plaintiff contends that all, or at least some, of the documents fall outside the scope of the quality assurance privilege. The parties have met and conferred in an effort to resolve this dispute. However, they have been unable to reach agreement as to whether Defendant must produce the documents at issue. Thus, the parties seek the Court's assistance in resolving this dispute. For the reasons set forth below, the Court finds that all of the documents listed in Defendant's privilege log are indeed privileged pursuant to the quality assurance privilege set forth in 25 U.S.C. § 1675, and that Defendant is not required to produce them.

## I. BACKGROUND

Plaintiff alleges in her First Amended Complaint (ECF No. 10) that Dr. Rocio D. Guzman, D.M.D., committed dental malpractice on February 1, 2012, when he negligently severed Plaintiff's right lingual nerve while performing a surgical extraction of two of Plaintiff's teeth. Plaintiff alleges Dr. Guzman, an employee of the Southern Indian Health Council, Inc. ("SIHC"), which is itself deemed part of the Public Health Service of the United States Department of Health and Human Services, failed to adequately explain to Plaintiff the risks associated with the surgery. Plaintiff further alleges that as a result of the severed lingual nerve, she has lost all sensation in the right side of her tongue, including her ability to taste.

## II. LEGAL STANDARD

As noted, by withholding the disputed documents, Defendant relies on the quality assurance privilege contained in 25 U.S.C. § 1675. This statute defines "medical quality assurance program" as:

> any activity carried out before, on, or after the date of enactment of the Indian Health Care Improvement Reauthorization and Extension Act of 2009 [enacted March 23, 2010] by or for any Indian health program or urban Indian organization to assess the quality of medical care, including activities conducted by or on behalf of individuals, Indian health program or urban Indian organization medical or dental treatment review committees, or other review bodies responsible for quality assurance, credentials, infection control, patient safety, patient care assessment (including treatment procedures, blood, drugs, and therapeutics), medical records, health resources management review, and identification and prevention of medical or dental incidents and risks.

25 U.S.C. § 1675(a)(2).

The statute defines "medical quality assurance record" as "the proceedings, records, minutes, and reports that (A) emanate from quality assurance program activities described [above]; and (B) are produced or compiled by or for an Indian health program or urban Indian organization as part of a medical quality assurance program." 25 U.S.C. § 1675(a)(3). Medical quality assurance records under the statute are "confidential and privileged" and, subject to certain exceptions which the Court finds inapplicable here, they "may not be disclosed to any person or entity." 25 U.S.C. § 1675(b). Further,

- 2 -

13cv2359-BAS (DHB)

subject to certain exceptions which, again, do not apply here, medical quality assurance records cannot "be subject to discovery or admitted into evidence in any judicial or administrative proceeding." 25 U.S.C. § 1675(c)(1).

### III. DISCUSSION

#### A. Parties' Arguments

As noted above, the parties dispute whether various documents identified in Defendant's privilege log fall within the Quality Assurance privilege. The documents, which have been provided to the Court for an *in camera* review[1], consist of emails, handwritten notes, information printed from an internet site, and reports.

Plaintiff first contends that the emails, handwritten reports, and the information obtained from the internet do not qualify as privileged under 25 U.S.C. § 1675 because, under the doctrine of *expression unius est exclusio alterius*, it is presumed that "when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)). The statute defines privileged medical quality assurance records as "proceedings, records, minutes, and reports." 25 U.S.C. § 1675(a)(3). According to Plaintiff, this list is exclusive and does not identify communications, notes, or information found on an internet site as being privileged.

Plaintiff next contends that the remaining documents, which consist of three reports, should not qualify under the quality assurance privilege because it is not clear from the privilege log whether the reports "emanate" from medical quality assurance program activities as contemplated by the statute or whether one of the three reports even involves anyone related to SIHC's quality assurance program.

---

[1] Notwithstanding the statute's prohibition of disclosure of privileged documents, *in camera* review by the Court is appropriate to determine whether the documents are privileged. *See Smith v. United States*, 193 F.R.D. 201, 207 (D. Del. 2000) ("[T]here is a long tradition of federal courts conducting an *in camera* review of potential evidence, even in the face of a[n] evidentiary privilege asserted by the government."). In addition, the parties agreed that *in camera* review is appropriate in this case. (*See* ECF No. 21 at 5:13-6:8, 11:2-5.)

Defendant contends that Plaintiff incorrectly argues that the definition of a medical quality assurance record necessarily excludes emails, handwritten documents, and information obtained from the internet. Rather, Defendant argues, any "record" that emanates from quality assurance program activities and is produced or compiled as part of a medical quality assurance program is privileged under the statute. Defendant also points out that the statute's definition of a medical quality assurance program consists of "*any activity* . . . to assess the quality of medical care." 25 U.S.C. § 1675(a)(2) (emphasis added). Further, Defendant contends that the declarations of Dr. Guzman and Meghan Lenaghan (ECF Nos. 25, 24), SIHC's quality control coordinator, demonstrate that all of the documents listed in Defendant's privilege log emanated from SIHC's quality assurance program activities and were produced or compiled by SIHC as part of its medical quality assurance program.

**B.      Analysis**

Upon review of the lodged documents, the parties' arguments and the relevant case law, the Court concludes that all of the documents in question are privileged medical quality assurance records within the meaning of 25 U.S.C. § 1675 and should not be produced by Defendant.

As an initial matter, SIHC is an Indian health program within the meaning of the statute. Moreover, it is clearly evident based on the Court's review of Ms. Lenaghan's declaration and the lodged documents that SIHC carries out a medical quality assurance program and that, following Plaintiff's February 1, 2012 procedure, SIHC's medical quality assurance program assessed the quality of Plaintiff's dental care for purposes of its quality assurance review and to identify and prevent future incidents and risks. Moreover, all of the disputed documents emanated from SIHC's quality assurance program activities and were produced or compiled as part of the medical quality assurance program. The documents clearly are the types of documents that a medical institution would produce and compile to assess its quality of patient care. Moreover, the documents all relate to SIHC's review and assessment of Plaintiff's visit, the details of

her procedure, and correspondence involving Ms. Lenaghan, SIHC's quality control coordinator.

Thus, the only question left unanswered is whether the documents fall within the statute's definition of medical quality assurance records, meaning that they are "proceedings, records, minutes, [or] reports." 28 U.S.C. § 1675(a)(3). The Court finds that all of the documents fall within the scope of this definition.

First, the Court recognizes there are no recorded judicial decisions citing 25 U.S.C. § 1675. Thus, the scope of the statute's definition of medical quality assurance records is an issue of first impression.

Second, under the plain language of 25 U.S.C. § 1675(a)(3), the three documents identified as "reports" in Defendant's privilege log are medical quality assurance records subject to the protection of the quality assurance privilege. The Court's review of these three documents confirms that they are indeed reports entitled to protection.

Third, with respect to the email communications and the information obtained from the internet, the Court finds no basis to interpret "records" as narrowly as Plaintiff suggests. Rather, in light of the statute's policy of encouraging medical institutions to improve their level of patient care and make appropriate corrective or preventative measures, the Court views the definition of "records" broadly in a manner that encompasses the correspondences between the quality assurance staff and the medical staff. The Court also interprets the definition to include information obtained to facilitate the quality assurance program's review, whether that information be obtained from the internet, as occurred in this case, or some other source.

The Court's conclusion is supported by judicial interpretation of a virtually identical statute, 10 U.S.C. § 1102[2], which sets forth a quality assurance privilege related

---

[2] The Fifth Circuit has recognized that in enacting 10 U.S.C. § 1102, "Congress recognized that 'medical quality assurance programs are the primary mechanism by which the Military Departments monitor and ensure that quality medical care is provided to Department of Defense beneficiaries,'" and that Congress enacted the statute in 1986 "to bar the discovery or use of medical quality assurance records in litigation except in certain limited instances" due to Congress' "then-current fear [that] 'release of committee

to medical care provided to Department of Defense beneficiaries. The quality assurance privilege in 10 U.S.C. § 1102 is virtually identical to that contained in 25 U.S.C. § 1675, including the definitions of medical quality assurance program and medical quality assurance record. Thus, 10 U.S.C. § 1102 provides significantly persuasive authority as to the scope of 25 U.S.C. § 1675.

In *Maynard v. United States*, 133 F.R.D. 107, 108 (D. N.J. 1990), the court was tasked with determining whether certain documents were confidential and privileged under 10 U.S.C. § 1102. In that case, where a patient's parent alleged negligence against an army hospital, the court found that a memorandum from a quality assurance coordinator to the chief of the nursing department, a report of unusual occurrence, and a portion of the minutes of a risk management committee were all medical quality assurance reports protected from disclosure. *Id.* at 108. Similarly, in *Cole v. McNaughton*, 742 F. Supp. 587, 588, 591 (W.D. Okla. 1990), the court found that several letters generated as part of an army hospital's quality assurance review constituted confidential and privileged medical quality assurance records under 10 U.S.C. § 1102. Just as the *Maynard* and *Cole* decisions concluded that communications fall within the definition of medical quality assurance records under 10 U.S.C. § 1102, the Court concludes that the communications identified in Defendant's privilege log are medical quality assurance records protected under 25 U.S.C. § 1675.

The Court finally addresses a provision in 25 U.S.C. § 1675 that might be interpreted, albeit incorrectly, as permitting a medical quality assurance program to insulate from discovery documents originating outside the quality assurance program, such as a patient's medical records. That provision, found at 25 U.S.C. § 1675(I), states:

> Nothing in this section shall be construed as limiting access to the information in a record created and maintained outside a medical quality

---

records . . . through discovery in litigation . . . [results in] beneficiaries . . . receiv[ing] less than the high quality care they deserve.'" *In re United States*, 864 F.2d 1153, 1154 (5th Cir. 1989) (quoting S. REP. NO. 331 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6413, 6440). These same policies apply to recipients of health care services at Indian health programs, as contemplated by 25 U.S.C. § 1675.

assurance program, including a patient's medical records, on the grounds that the information was presented during meetings of a review body that are part of a medical quality assurance program.

An identical provision, found in 10 U.S.C. § 1102(h), was analyzed in a case involving a plaintiffs' request for information contained in military-wide databases:

> After reviewing the language of this statute, the Court now finds that § 1102(h) does not limit the confidentiality and privilege afforded by § 1102(a) to information maintained solely within, or originating from, a quality assurance program. Rather, § 1102(h) provides that information existing or originating outside of a quality assurance program does not become confidential and privileged merely by incorporating it into a quality assurance record. In other words, nothing in § 1102 precludes the disclosure of a patient's medical files by a hospital, even if those files have been incorporated into a medical quality assurance record . . . . Section 1102(h) merely stands for the proposition that a hospital or other entity may not insulate a non-privileged, non-confidential document from disclosure by filtering it through a quality assurance program. This does not mean, however, that § 1102(h) authorizes the disclosure of a patient's medical files from a medical quality assurance record. To the contrary, § 1102(a) renders such quality assurance records exempt from disclosure. Section 1102(h), on the other hand, makes clear that an individual is not precluded from obtaining those files from an outside source (i.e., a source other than the quality assurance program) simply because they may have been incorporated into a quality assurance record.

*Dayton Newspapers, Inc. v. Dep't of the Air Force*, 107 F. Supp. 2d 912, 917-18 (S.D. Ohio 1999).

Similarly, the Court finds that Plaintiff is not prevented from obtaining from other sources certain documents that are found in SIHC's quality assurance file. For example, Plaintiff is not prevented from obtaining a copy of Dr. Lester Machado's operative report that was attached to Ms. Lenaghan's April 23, 2010 email to Dr. Guzman. (*See* ECF No. 24 at ¶ 14.) While the body of the email is privileged, Plaintiff's medical records from Dr. Machado, an outside source who Plaintiff consulted for treatment following the allegedly negligent surgical procedure at SIHC, are not privileged. In addition, Plaintiff is not precluded from locating the online information from Drugs.com addressing Septocaine. The mere fact that these documents are found in SIHC's quality assurance file does not insulate them from discovery. However, Plaintiff must obtain these outside documents from sources other than Defendant because the entirety of SIHC's quality assurance file is privileged under 25 U.S.C. § 1675.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that each of the documents identified in Defendant's privilege log are medical quality assurance records that are confidential and privileged pursuant to 25 U.S.C. § 1675.  Plaintiff's request to compel production of the documents is, therefore, **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 22, 2014

DAVID H. BARTICK
United States Magistrate Judge